Commonwealth *v.* Johnson, Appellant.

148

Argued April 14, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Alan Frank*, for appellant.

*Edwin J. Martin*, Assistant District Attorney, with him *Robert W. Duggan*, District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., June 17, 1965:

At a trial before a jury, appellant was convicted on five indictments charging five separate and distinct burglaries (Nos. 170, 189, 190, 191 and 192, June Sessions 1964). The indictment at No. 170 also charged malicious prowling. Appellant's motion for a new trial was refused by the court below. Consecutive sentences of four to eight years were imposed at Nos. 170 and 191. Sentence on the other bills was suspended for a period of twenty years.

Appellant was first apprehended as the result of a burglary which allegedly occurred on June 18, 1964. On that date, at about 4:00 a.m., an intruder was discovered in the nurses' home of the Allegheny General Hospital located on the North Side of the City of Pittsburgh. The police were summoned. One police officer saw the intruder slide out through a window to a courtyard twenty-five feet below. The intruder then escaped by leaping through a glass window encased in a wire mesh. Blood on the broken window and on the floor indicated that the intruder had been injured in this escape.

Some time after 4:00 a.m. a cab driver picked up a man, who had a white rag wrapped around his arm, on the North Side of Pittsburgh. The cab driver, who later identified appellant as this rider, drove him to the Hill district in Pittsburgh. At about 6:00 a.m. the same morning, in response to a telephone call, the police apprehended appellant in Mercy Hospital where he was being treated for a cut arm.

Appellant was held continuously in custody from June 18, 1964. A police officer testified that several days later, on or about June 24, 1964, appellant confessed not only to the burglary at the nurses' home but also to four other burglaries which occurred on the North Side of Pittsburgh. He stated that appellant volunteered this information without any interrogation by the police, and that appellant never asked for a lawyer. After a preliminary hearing on June 24, 1964, appellant was formally held for trial on the charge of burglary at the nurses' home.

Further testimony of this officer indicated that on June 25, 1964, appellant was driven to the sites of the four other burglaries where he again admitted his guilt. Police officers stated, however, that appellant refused to sign a statement admitting his participation in any of these burglaries. After a second preliminary

hearing on July 10, 1964, appellant was held for trial on the four burglaries.

The exact date of appointment of counsel for appellant cannot be determined from the record. One of the police officers did testify, however, that he never advised appellant of his right to remain silent prior to appellant's oral confessions.

Appellant testified in his own behalf at length. He denied all of the charges; he further denied that he had volunteered any information or confessed to any of the crimes contained in the indictments. He explained that the cuts for which he was being treated on the night that he was apprehended in the Mercy Hospital had been received in a fight. He further explained that he had been working at the house of a friend on that night. He also claimed that he had requested counsel throughout the period during which he was held in custody.[1]

---

[1] We observe that there may be a constitutional question concerning the admissibility of appellant's oral confessions and admissions in light of *Escobedo v. Illinois*, 378 U. S. 478 (1964). In *Escobedo*, supra, the court said at pp. 490-491: ". . . [W]here, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution . . . and . . . no statement elicited by the police during the interrogation may be used against him at a criminal trial." See also, *Commonwealth ex rel. Linde v. Maroney*, 416 Pa. 331, 206 A. 2d 288 (1965); *Commonwealth v. Patrick*, 416 Pa. 437, 206 A. 2d 295 (1965); *U. S. ex rel. Russo v. State of New Jersey*, 351 F. 2d 429 (3d Cir. 1965).

Appellant did not raise this constitutional issue either in the court below or on appeal. Important factual issues on the consti-

I

Appellant first contends that the trial court abused its discretion in trying appellant in one trial on five separate and unrelated bills of indictment charging burglary. We have today in *Commonwealth ex rel. Davis v. Maroney*, 206 Pa. Superior Ct. 68, 210 A. 2d 920 (1965), reaffirmed the long-established rule ". . . that consolidation of indictments charging separate and distinct offenses is within the sound discretion of the trial judge and where the indictments are closely related such consolidation is not grounds for reversal unless it clearly appears that defendant was prejudiced thereby. Commonwealth v. Patrick, 416 Pa. 437, 445; Commonwealth v. Krzesniak, 180 Pa. Superior Ct. 560, 567."[2]

The trial judge in this case carefully instructed the jury that they should consider each of the five bills separately, and that they must find guilt beyond a reasonable doubt in each case. Appellant's counsel requested no further instructions on this point. Each of the burglaries occurred within a relatively short span of time (March 23, two on June 9, June 16, and June 18, 1964) and on the North Side of Pittsburgh. We cannot find that appellant was clearly prejudiced

tutional question remain unresolved. It is not clear from the record whether the alleged admissions of appellant were wholly voluntary or made after interrogation. Nor does it clearly appear whether defendant requested counsel, had counsel, or was notified of his privilege against self-incrimination prior to his alleged oral admissions of guilt. In view of the inconclusive state of the record, and since the matter has not been formally raised, we shall not, at this time, pass upon this constitutional question.

[2] The writer of this opinion did indicate, however, in a concurring opinion in the *Davis* case, supra, his growing concern over the tendency of trial courts to consolidate such separate and distinct bills of indictment at a single trial without due regard for the potential prejudice to defendants.

by the consolidation of these bills of indictment for trial. See also *Commonwealth v. Lawson,* 204 Pa. Superior Ct. 239, 203 A. 2d 406 (1964); *Commonwealth v. Nestor,* 183 Pa. Superior Ct. 350, 132 A. 2d 369 (1957); *Commonwealth v. Leitch,* 185 Pa. Superior Ct. 261, 137 A. 2d 909 (1958).

## II

Appellant next contends that the evidence at trial was insufficient to sustain the conviction. With this we cannot agree. The victims of each of the burglaries established the corpus delicti of these crimes. This testimony, coupled with appellant's confessions, was sufficient to establish appellant's guilt.

Proof of the burglary at the nurses' home is supported not only by appellant's admission of guilt but also by the identification of a police officer who pursued him.

It is true, as appellant argues, that the Commonwealth failed in its attempt to demonstrate that the blood found in the nurses' home was appellant's. This failure of proof was not fatal to the Commonwealth's case, however, since appellant was identified by witnesses.

## III

Appellant claimed that at the time of the alleged burglary at the nurses' home, he was working at the home of a friend where he remained all night. Appellant's counsel requested and was granted an opportunity to produce this witness during the luncheon recess. After lunch, appellant's counsel made a request for a further forty-five minute recess to produce the alibi witness. This request was refused. We do not believe that the court abused its discretion by this re-

fusal. See *Commonwealth v. Drew,* 190 Pa. Superior Ct. 478, 154 A. 2d 285 (1959). The trial took place more than two months after the preliminary hearings. Counsel had ample opportunity to summon the alibi witness by subpoena and failed to do so.

## IV

After appellant took the stand in his own defense, the Commonwealth offered evidence of prior convictions and guilty pleas of appellant to affect his credibility. The assistant district attorney properly read and introduced into evidence the original bills of indictment, guilty pleas and convictions. These were sufficient and adequate proof of appellant's prior convictions. *Commonwealth v. Harvie,* 345 Pa. 516, 28 A. 2d 926 (1942); *Commonwealth v. Thompson,* 367 Pa. 102, 79 A. 2d 401 (1951). There is no merit, therefore, in appellant's contention that the prior convictions were not sufficiently proven.

## V

Appellant contends that the trial court also abused its discretion by:

(1) offering appellant's counsel the alternative of completing his closing address to the jury at 4:00 p.m. or continuing it at 9:30 the next morning;

(2) limiting counsel on cross-examination in several instances; and

(3) allowing and encouraging a hostile atmosphere.

We have carefully reviewed the record with respect to all of these contentions, and find them to be without merit. The trial court's actions were well-considered, were not prejudicial to appellant and were certainly not an abuse of discretion.

## VI

Finally, appellant contends that the charge of the court was fundamentally deficient by reason of its failure to adequately define for the jury the nature of the crimes charged. The record shows that counsel was afforded full opportunity by the trial court to request additional points for charge. Yet further instructions were never requested.

We recognize, of course, that the failure to adequately define and explain a felony or serious misdemeanor constitutes fundamental error. *Commonwealth v. Franklin,* 160 Pa. Superior Ct. 484, 52 A. 2d 230 (1947). We find, however, that the charge did adequately define the crimes set forth in the bills of indictment. The trial judge gave the definition of burglary contained in the criminal code and further distinguished malicious prowling from burglary. By emphasizing the statute, the judge made clear that appellant must have had an intent to commit the felony.

The judge further instructed the jury that they must find appellant guilty beyond a reasonable doubt and that this "will apply to each of the five separate indictments distinctly and independent of each other." This point was re-emphasized several times during the court's charge. We find that the charge was adequate and free from fundamental error.

Judgments of sentence affirmed.