J-S84025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILLIAM LUCAS | |
| Appellant | No. 2531 EDA 2015 |

Appeal from the Judgment of Sentence Dated April 16, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010798-2013
CP-51-CR-0011665-2013

BEFORE:  OLSON, J., SOLANO, J., and FITZGERALD, J.[*]

MEMORANDUM BY SOLANO, J.:                **FILED FEBRUARY 07, 2017**

Appellant, William Lucas, appeals from the judgment of sentence of 35 to 85 years' incarceration under Docket No. CP-51-CR-0010798-2013 for robbery, unlawful possession of a firearm, and possession of an instrument of a crime [1] and under Docket No. CP-51-CR-0011665-2013 for rape, unlawful restraint, sexual assault, unlawful possession of a firearm, indecent assault, robbery, unlawful sexual contact with a minor, possession of an

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3701(a)(1)(i), 6105(a)(1), and 907(a), respectively.

instrument of a crime, and aggravated indecent assault.[2]  After careful review, we affirm.

### Facts[3] Relating to Charges at Docket No. 10798

On August 5, 2013,[4] at 3:00 A.M., Devin Ross, a 19-year old black woman, was returning from a friend's home via trolley.  She exited at 62nd Street and Elmwood Avenue in Philadelphia and noticed a brown-skinned man wearing a gray hooded sweatshirt ("hoodie") and dark-colored pants cross the street with her to a bus stop.  N.T., 1/6/15, at 37-39, 41, 60.  Upon seeing him repeatedly look up the street, she checked the bus schedule on her cellular telephone and told him that the bus scheduled for 3:08 A.M. would arrive in eight minutes.  The man—Appellant—did not respond.  *Id.* at 39.  Because there were streetlights on both sides of the street, Ms. Ross had a clear view of Appellant, who was standing approximately eighteen inches away from her.  *Id.*

---

[2] 18 Pa.C.S. §§ 3121(a)(1), 2902(a)(1), 3124.1, 6105(a)(1), 3126(a)(2), 3701(a)(1)(i), 6318(a)(1), 907(a), and 3125, respectively.

[3] In each case, we relate the facts in a light most favorable to the Commonwealth, the verdict-winner below.

[4] According to the Commonwealth, Appellant had been released from federal custody just one week before the crimes in this case were committed; however, the Commonwealth provides no citation for this timeframe.  Both parties agree that Appellant was on federal probation on August 5 and 6, 2013.  Appellant's Brief at 6 n.3, 25, 48; Commonwealth's Brief at 43.

As Ms. Ross attempted to put her headphones into her ears, Appellant approached her, pulled out a firearm, pointed it at her abdomen, and told her to give him her phone. N.T., 1/6/15, at 39, 62. When she screamed, Appellant told her, "if [she] screamed again, that he was going to shoot [her]." She gave him her phone. *Id.* at 39. Appellant then spun around, put on the hood, began walking, looked back at her, and "turned the corner onto Elmwood Avenue." *Id.* at 39-40, 73.

Once Ms. Ross was certain that Appellant had left, she flagged down an automobile and told the two male occupants, who she did not know, what had happened. N.T., 1/6/15, at 40, 42-43, 65-66. Aside from hearing the passenger referred to as "Tim," she never learned the names, phone numbers, or addresses of the vehicle's occupants. Ms. Ross then entered the vehicle, and they drove around until she spotted Appellant approximately four blocks away, on Dewey Street. The driver stopped the car and asked Appellant if he had Ms. Ross's phone; Appellant answered, "No." *Id.* at 40. Appellant also did not reply when asked if he had a firearm. *Id.* The driver then brought Ms. Ross to her sister's home. *Id.*

The next day, Ms. Ross reported the robbery to the police and gave a statement. Ex. C-3; N.T., 1/6/15, at 44, 48-49. In her statement, Ms. Ross described the perpetrator as a black male with facial hair in his late 20s or early 30s who wore a grey hoodie and dark pants. Ex. C-3 at 1.

On August 9, 2013, Ms. Ross accompanied two detectives as they drove around the neighborhood in an unmarked police vehicle in an attempt to identify the perpetrator. N.T., 1/6/15, at 43-44, 198-99. As they turned from 62nd Street onto Woodland Avenue — four blocks away from the scene of the crime — she recognized Appellant on the street. The police turned their vehicle around so that Ms. Ross could confirm her identification, and she then did confirm it. The detectives then called for a marked police vehicle, and Appellant was arrested. Ms. Ross gave a second statement confirming her identification of Appellant. *Id.* at 44, 50-51.

Later that day, the detectives obtained a search warrant for Appellant's residence. Ex. C-20; N.T., 1/6/15, at 203-04. During the search, police recovered clothes matching those described by Ms. Ross as worn by the man who robbed her. Ex. C-5; N.T, 1/6/15, at 207. Police photographed the clothing and showed the photographs to Ms. Ross, who verified that they matched the clothes worn by the perpetrator. *Id.* at 52-53, 209-10.

**Facts Relating to Charges at Docket No. 11665**

At 2:56 A.M. on August 6, 2013, a 17-year-old woman identified in the record as S.J. boarded a bus at 58th Street and Cecil Street in Philadelphia. N.T., 1/6/15, at 104-05, 117. The bus ride lasted about seven minutes. Between 3:00 A.M. and 3:05 A.M., she exited the bus at 62nd Street and Elmwood Avenue, intending to transfer to a trolley. *Id.* at 105, 117. After

waiting for about ten minutes, she decided that a trolley would not be arriving soon and started walking up Elmwood Avenue. *Id.* at 106, 118. When she reached 64th Street, she was grabbed from behind and turned around by Appellant, who aimed a firearm at her face and demanded that she give her cell phone to him. *Id.* at 107-08, 110, 112, 118, 135-36. Because they were under a street lamp, she could see Appellant's face clearly. *Id.* at 111.

After taking her phone, Appellant forced S.J. into a driveway across the street and raped her. N.T., 1/6/15, at 108-09, 115-16, 118. Appellant left the scene threatening that he would shoot S.J. if she followed him. *Id.* at 109. S.J. saw Appellant's face multiple times during the assault. *Id.* at 113-14, 116, 118-19.

After Appellant left, S.J. walked home and contacted the police. N.T., 1/6/15, at 109, 118-19, 141. S.J. gave a formal statement to Detective Martinka. Ex. C-11; N.T., 1/6/15, at 122, 141, 170-71. In the statement, S.J. described her attacker as a black male "in his late 20s to early 30s" with "dark skin, nappy hair, nappy [and] long sideburns," wearing a "white shirt under a gray hoodie [and] blue jeans." Ex. C-11 at 2.

S.J. then went to a hospital for a rape examination. N.T., 1/6/15, at 122, 124, 172-73. DNA testing revealed the presence of a male Y-chromosome; although the samples tested did not identity Appellant individually, tests on the Y-chromosome matched "William Lucas and his

paternity related male relatives" — that is, the Y-chromosome originated from Appellant or his male paternal relatives. N.T., 1/7/15, at 120.

On August 9, 2013, Detective Martinka showed S.J. a photographic array in which Appellant did not appear. S.J. did not identify anyone in that array. N.T., 1/6/15, at 129, 181. She said, "[N]o, none of these people are him. I know for sure that none of these people are him." *Id.* at 130.

Later that day, other detectives informed Detective Martinka that a male "matching the description" given by S.J. "had been arrested for a similar crime." N.T., 1/6/15, at 181-82. Detective Martinka then created a second photograph array that contained Appellant's photograph. Ex. C-14; N.T., 1/6/15, at 181.

On August 10, 2013, Detective Martinka showed S.J. the second photographic array. Ex. C-14; N.T., 1/6/15, at 128-30, 182. He did not tell her whether he believed that the perpetrator's photograph was in this array. *Id.* at 132. As S.J. was reviewing the mugshots, she focused on one specific photograph — Appellant's; she began saying, "Is it him? I'm not sure if it's him. Is it him?" *Id.* at 131, 142. Although S.J. was (as she later described it) "thinking out loud," she did not point to or otherwise specify any particular photograph to Detective Martinka at this time; the detective only "knew [she] was looking at the page" and "never knew which specific person [on that page she] was talking about." *Id.* at 144. She merely had "a puzzled face" and "was indecisive about it." *Id.* at 142, 145. Nobody told

S.J. or suggested to her who in that photographic array she should identify. *Id.* at 149.

S.J. then said, "I'm not sure because I don't want to pick the wrong person." N.T., 1/6/15, at 145. Detective Martinka asked her if she thought "that there was someone on the page that could have been him," and she answered affirmatively. *Id.* The detective then told her that the person might look different in the photograph from how he looks today — for example, the photographs might be a few years old, or the person could have a different haircut or facial hair. *Id.* at 131. Detective Martinka did not direct S.J. towards any particular photograph. *Id.* S.J. looked again at Appellant's photograph and said, "That's him. I know for sure that that is him." *Id.* at 131, 145. S.J. circled Appellant's photograph and signed the array. *Id.* at 132, 145. During her trial testimony, when asked why she identified Appellant in that photographic array, S.J. said, "Because I knew that that was the man that . . . sexually assault[ed] me and rob[bed] me." *Id.* at 149.

After making her identification, S.J. overheard Detective Martinka saying "O.K." to another police officer and gave him a quizzical look. N.T., 1/6/15, at 132. Detective Martinka then explained to S.J. that Appellant had been arrested the day after her assault, and police had found the hoodie in his possession. *Id.* at 132, 145. S.J. did not know about Appellant's arrest until after she had made the identification. *Id.* Detective Martinka told S.J.

after her identification that, "in [his] opinion, it was the right guy and he was arrested for assault on another woman in the area." *Id.* at 191-92.

Appellant then was charged for rape and other crimes identified above. At the preliminary hearing, S.J. again identified Appellant. N.T., 1/6/15, 132-33.

## Consolidation of the Charges and Trial

On November 13, 2013, the Commonwealth moved to consolidate both cases. At the November 13, 2013, hearing on that motion, Appellant argued that these crimes involved two separate incidents, that the evidence relating to each incident was not admissible with respect to the other incident, and that consolidation would be unduly prejudicial. N.T., 11/13/13, at 3.

At Appellant's request, the court granted a continuance, and a second hearing on the motion to consolidate was held on December 4, 2013. As the trial court later explained, it then decided to consolidate the two cases:

> At the hearing held on December 4, 2013, to consider the Commonwealth's motion, the Commonwealth established to the Court's satisfaction that there was a "high correlation in the details" of the evidence linking the two crimes and that each crime was easily distinguishable from the other. The Commonwealth's investigation revealed that the first crime occurred at approximately 3:00 a.m., when [Appellant] robbed a young 19 year old black female, who was alone at a bus stop in the city of Philadelphia, of her cell phone at gunpoint. This victim later identified [Appellant] as her assailant. The second crime, which occurred 24 hours later, again at approximately 3:00 a.m., involved a young 17 year old black female who was also alone at the same bus stop. In addition to robbing this victim of her cell phone at gun point, [Appellant] also attempted

to rape her. (N.T. 12/4/13 pgs. 5, 6) It was also revealed that both victims described their assailants as wearing the same type of clothing. (N.T. 12/4/13 pgs. 9, 10)

Trial Ct. Op., 2/4/16, at 11-12.

Appellant argued that because there was a break in time, the incidents should be considered to be separate. N.T., 12/4/13, at 8. The trial court asked, "Both of these incidents, the victim has identified the defendant?" *Id.* at 10. The Commonwealth answered affirmatively. *Id.* The trial court granted the Commonwealth's motion for consolidation after asking the rhetorical question, "I mean, how many guys are running around in [the] same time period robbing young women at the same bus stop?" N.T., 12/4/13, at 10. The court explained, "After careful consideration of the Commonwealth's motion and argument, the Court was satisfied and found the two crimes were sufficiently related to justify their [consolidation] for the purposes of trial." Trial Ct. Op., 2/4/16, at 12 (citing N.T., 12/4/13, at 10).[5]

Appellant's consolidated jury trial began on January 6, 2015, on all counts except for the two firearms charges. Detective Martinka testified on the first day. During cross-examination, defense counsel attempted to ask the detective about the police department's current policies, but the trial

---

[5] The trial court later permitted Appellant to be tried separately for the firearms violations charged in each case. N.T., 1/5/15, at 13-14. As discussed below, he was convicted in a separate non-jury proceeding on those charges.

court sustained the Commonwealth's objection. N.T., 1/6/15, at 190.[6] Appellant's counsel then tried to elicit whether photographic array identifications should be double-blind — that is, whether the person showing a photographic array to a witness should have no knowledge of the suspect. *Id.* The Commonwealth again objected, and the trial court sustained the objection. *Id.* Appellant's counsel next asked, "In your experience as an officer, have you ever had one of your fellow detectives show photo arrays to a complainant because you didn't want to influence them?" *Id.* The Commonwealth once more objected, and its objection was sustained. *Id.* At no time did Appellant's trial counsel respond to the trial court's rulings sustaining the Commonwealth's objections by requesting a sidebar, making an offer of proof, or otherwise stating the bases for his questions on the record. *See id.* at 189-92.

During cross-examination, Detective Martinka testified that everything he discussed with S.J. was memorialized in her statement and that he sometimes tells a witness who has picked out a photograph from a photographic array that the witness has chosen the "right guy." N.T., 1/6/15, at 189-91. In response to the trial court's question, Detective Martinka testified that he told S.J. that "the male who assaulted you may or

_____

[6] Appellant's trial counsel asserts in his brief that he intended to ask Detective Martinka specifically about police identification policies. Appellant's Brief at 4, 45.

may not be in the photo array," and that, after her identification, "in [his] opinion, it was the right guy and he was arrested for assault on another woman in the area." *Id.* at 191-92.

The morning after Detective Martinka's testimony, Appellant moved for a mistrial, maintaining that the police failed to disclose the circumstances of S.J.'s identification prior to trial. N.T., 1/7/15, at 13-16. Appellant insisted that the police had misrepresented his appearance in the photographic array and had tainted S.J.'s identification by telling her that she picked the right person. *Id.* at 15-16. The trial court denied the motion, stating that "one way or another, the jury can be instructed to, either, disregard the in-court identification, or receive it with caution. . . ." *Id.* at 22.

After the parties rested, defense counsel again requested a mistrial, arguing that regardless of the evidence presented during the pretrial hearing on the motion for consolidation, the evidence presented at trial did not justify the consolidation, as there was no "common plan, design and scheme" because "[o]ne's a robbery and one's a sex case." N.T., 1/8/15, at 5-6. The trial court denied the motion. *Id.*

The trial court charged the jury on the factors that it should consider when evaluating Ms. Ross's identification testimony:

> In evaluating that testimony, in addition to the other instructions I have already provided, you should consider the additional following factors.
>
> First, did the witness have a good opportunity to observe the perpetrator of the offense? . . . Next, was there sufficient

lighting for her to make her observations? Was she close enough to the individual to note his facial and other physical characteristics, as well as any clothing he was wearing? Has she made any prior identification of the defendant at any other proceeding? Was her identification positive, or was it qualified by any hedging or inconsistencies?

During the course of this case, did the witness identify anyone else, other than . . . the defendant as the perpetrator?

N.T., 1/8/15, at 84-85.

The trial court provided the following additional instruction about S.J.'s

identification of Appellant in the second photographic array:

There are some other considerations with regard to [S.J.'s] testimony, and the reason is that the police treated her in a different way. The detective showed her a photo array, she picked out a photograph, and instead of simply saying, thank you, I don't remember the exact words, he's the same guy we locked up for this kind of thing yesterday, or good job, you got the right guy, whatever the words were, they were intended to tell her, nice job. Good identification. I agree with the guy you picked out.

And that's a problem. That's a problem because, when you come to the preliminary hearing and she's asked to identify somebody in court, you have to ask yourself, did she pick him out at the preliminary hearing because she recognized him from the robbery, rape/robbery, or was she doing it because the detective had told her she did a nice job and she picked out the right guy?

And the same with her trial testimony, and you've been aware of that complication from the time the detective testified, because I asked him about that.

That doesn't mean you throw out his identification, but it does mean that you have to look at what happened in the courtrooms, the preliminary hearing courtroom, the trial courtroom, and decide whether you're going to count that as a good ID.

- 12 -

And if you don't, if you throw out those IDs, then you're left with other evidence pointing at him, pointing at [Appellant], the photo array and other things that we'll talk about, as well as the physical evidence. You had physical evidence, you have the chemical evidence, the DNA stuff.

So in her testimony, [S.J.] has identified this defendant as the person who committed the crimes against her. There is a question of whether her identification is accurate. If you believe that Detective Martinka's comments prejudiced the in-court identification of [S.J.], then you must consider, with caution, [S.J.'s] testimony identifying the defendant as the person who committed the crime when she made those identifications at trial and at the preliminary hearing.

If, however, you do not believe that this factor prejudiced the in-court identification of [S.J.], then you need not receive the testimony with caution and you may treat it like any other testimony.

N.T., 1/8/15, at 86-88. The trial court emphasized that the jury had to consider each charge individually. *Id.* at 89-90.

On January 9, 2015, Appellant was found guilty of all charges submitted to the jury. After the jury's verdict was entered, Appellant waived his right to a jury trial on the remaining firearms counts, agreed instead to submit these charges to the court for determination, and was found guilty on the firearms charges. N.T., 1/9/15, at 26-27, 31.

**Appellant's Sentencing**

In preparation for sentencing, a pre-sentence investigation ("PSI"), mental health evaluation, and sexually violent predator assessment were ordered. N.T., 1/9/15, at 31. The PSI was prepared on April 10, 2015, and admitted as the Court's Exhibit "A" ("the 2015 PSI"). In addition to this

2015 PSI, the trial court also reviewed a PSI dated March 10, 2004, which was prepared in connection with Appellant's prior convictions on various assault, theft, and weapons charges; that 2004 PSI was admitted as the Court's Exhibit "B" ("the 2004 PSI").

At his sentencing hearing on April 16, 2015, the trial court determined that Appellant did not qualify as a sexually violent predator. N.T., 4/16/15, at 15. During sentencing, the Commonwealth stated that Appellant's record began when he was 14 years old and continued with the following findings of delinquency and convictions: violation of the Uniform Firearms Act[7] in 1999, when Appellant was 16 years old; simple assault, a misdemeanor, in 2001; possession with intent to deliver ("PWID") at age 20 in 2002; possession of an instrument of crime, simple assault, conspiracy, and terroristic threats in 2003; and an additional PWID in 2006. *Id.* at 9-10, 16. After aging out of the juvenile system, Appellant has been incarcerated multiple times, has been convicted eight separate times, and has had three probation violation hearings. *Id.* at 16-17. The Commonwealth asserted that Appellant has never been able to successfully complete any period of community supervision without violating again. *Id.*

At the conclusion of the sentencing hearing, the trial court stated:

[The court has] sentenced [other] people to hundreds of years, and said on the record [it is] doing this just to make sure, in the

---

[7] 18 Pa.C.S. §§ 6101-6127.

case there are medical advances, [those defendants] never get[]
out. [Nevertheless, the court does not] think [Appellant] has
demonstrated the level of depravity that requires [it] to impose
a sentence like that, that he will never get out.

*Id.* at 25; *accord* Trial Ct. Op., 2/4/16, at 25. The trial court added that it had listened to the arguments of counsel, read the PSI reports, and reviewed the sentencing guidelines. N.T., 4/16/15, at 26.

The trial court then imposed sentence. N.T., 4/16/15, at 26-27. At Docket No. 10798, Appellant was sentenced to incarceration for 8-20 years for robbery and 2-5 years for unlawful possession of a firearm, to be served consecutively. At Docket No. 11665, the court sentenced Appellant to incarceration for 10-20 years for rape, 2-5 years for unlawful restraint, 2-5 years for unlawful possession of a firearm, 8-20 years for robbery, 1-5 years for unlawful contact with a minor, and 2-5 years for aggravated indecent assault, to be served consecutively to each other and to the sentence at Docket No. 10798. Appellant received no further penalty on the remaining counts. His aggregate sentence is 35-85 years' incarceration.

On April 20, 2015, Appellant filed a timely Motion for Reconsideration of Sentence, in which he argued that the sentence imposed by the trial court was excessive, grossly disproportionate to his crimes, and contrary to the fundamental norms which underlie the sentencing process. He continued that the trial court failed to engage in individualized sentencing by not taking

into account Appellant's age,[8] background, and character. He added that the trial court violated 42 Pa.C.S. § 9721(b), which provides —

> the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

At the conclusion of a video hearing held on August 3, 2015, the trial court set forth additional reasons for Appellant's original sentence and denied Appellant's motion. N.T., 8/3/15, 8-9.

Appellant timely filed this appeal on August 17, 2015. The trial court filed a Rule 1925(a) opinion on February 4, 2016.[9]

_____

[8] Appellant was 32 years old as of the hearing on the motion for reconsideration of sentence. N.T., 8/3/15, at 3. As of that date, he had already been incarcerated for almost two full years. *Id.* Thus, he would be 65 years old if he were released from incarceration after his imposed minimum sentence of 35 years. *Id.* Additionally, Appellant alleged that his sentence for violating his federal probation was deferred pending the outcome of this appeal. *See* Appellant's Brief at 6 n.3.

[9] Appellant filed a Rule 1925(b) statement on September 21, 2015, but also requested an extension of time to file a supplemental statement once the complete notes of testimony were transcribed. He filed a supplemental statement on January 12, 2016, but the trial court's opinion erroneously stated that no supplemental statement had been filed. *See* Trial Ct. Op., 2/4/16, at 3. Nevertheless, we conclude that this error was harmless because the trial court's opinion addressed all of the issues raised in the supplemental statement.

## Issues Raised on Appeal

Appellant raises the following issues on appeal:

A.    Did the lower court err and abuse its discretion in ordering a joint trial in the two instant matters, and later denying [A]ppellant's request for a mistrial, where evidence of one offense would not have been admissible in a trial on the other, where the two offenses were not part of a common plan, scheme or design, were not sufficiently signature to establish a *modus operandi*, and the joinder unduly prejudiced [A]ppellant?

B.    Did the lower court err in denying a mistrial because the Commonwealth failed to disclose mandatory and exculpatory evidence that Police Detectives misrepresented facts which induced a positive identification of the [A]ppellant in a photo array and then reinforced that tainted identification by telling the complainant she had picked the "right guy" in violation of Brady v. Maryland, 373 U.S. 83 (1963),[10] all in violation of the fundamental due process right to a fair trial under the state and federal constitutions?

C.    Did the lower court err in barring defense counsel from questioning Detective Martinka regarding police identification policy, procedure and best practices, thereby denying [A]ppellant a full and fair opportunity to cross-examine witnesses, to present a defense and to enjoy due process of law, as the issue is relevant and probative of the validity, reliability, and accuracy of both the in court and out of court identifications?

D.    Did the lower court abuse its discretion and violate the Sentencing Code when it sentenced appellant to an aggregate sentence of 35 to 8[5] years in state prison, where that sentence is manifestly excessive, clearly unreasonable, far surpasses what is necessary to protect the public, and failed to account for

---

[10] ***Brady*** held that a prosecution's withholding of information or evidence that is favorable to a criminal defendant's case violates the defendant's due-process rights and that the prosecution has a duty to disclose such information or evidence.  373 U.S. at 86-89.

> [A]ppellant's rehabilitative needs, and where the lower court failed to state its reasons for its sentence on the record?

Appellant's Brief at 4-5 (suggested answers omitted).

## Challenge to Consolidation

We begin by addressing Appellant's challenge to consolidation of all charges (other than the firearms charges) that were docketed at Nos. 10798 and 11665. *See* Appellant's Brief at 4. The consolidation of separate indictments or informations is addressed to the sound discretion of the trial court and should be reversed only for a manifest abuse of discretion or prejudice and clear injustice to an appellant. ***Commonwealth v. Lark***, 543 A.2d 491, 496 (Pa. 1988).

Consolidation is governed by Rule 582(A)(1)(a) of the Rules of Criminal Procedure:

> Offenses charged in separate indictments or informations may be tried together if the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion

The admissibility issue is governed by Rule 404(b) of the Pennsylvania Rules of Evidence:

> **(b) Crimes, Wrongs or Other Acts.**
>
> > *(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> >
> > *(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving

motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa. R. Evid. 404(b)(1)-(2).

In **Commonwealth v. Newman**, 598 A.2d 275 (Pa. 1991), the Supreme Court explained:

[Informations] may be consolidated where the separate offenses show the unusual or distinctive *modus operandi* of the defendant. In arriving at this standard, [the Supreme Court of Pennsylvania] weighed the possibility of prejudice to the defendant and/or the injustice caused by the consolidation against the consideration of judicial economy. In seeking consolidation of separate indictments, the Commonwealth is required to show more than that the crimes are of the same class. Rather, it must be shown that a high correlation in the details of the crimes exists such that proof that the defendant committed one makes it very unlikely that anyone else but the defendant committed the others. . . .

Accordingly, evidence of other crimes may be introduced for the limited purposes of showing (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial.

598 A.2d at 278 (citations omitted). "As with any evidentiary ruling, the trial court should balance the relevancy and evidentiary need for the evidence of distinct crimes against the potential for undue prejudice." **Commonwealth v. Gordon**, 673 A.2d 866, 870 (Pa. 1996). Any potential prejudice resulting from consolidation can be cured with proper jury

instructions. ***Commonwealth v. Johnson***, 211 A.2d 100 (Pa. Super. 1965).

"To establish similarity [in determining whether evidence of crimes, wrongs, or other acts is admissible], several factors to be considered are the elapsed time between the crimes, the geographical proximity of the crime scenes, and the manner in which the crimes were committed." ***Commonwealth v. Rush***, 646 A.2d 557, 561 (Pa. 1994). For example, ***Rush*** involved two separate criminal incidents regarding an intruder who gained non-forcible entry by ringing a doorbell at the residence of a victim who had only recently been introduced to the defendant. The victims — who were both young black females — had their underclothing or nightclothes pulled from them, were stabbed with a knife taken from their own apartments that was later wiped clean and left at the scene, and were attacked while alone in their third floor bedroom in apartment buildings where the defendant resided on the first floor. ***Id.*** The Supreme Court of Pennsylvania found that there were "sufficient similarities to warrant the conclusion that one individual committed both crimes." ***Id.***[11]

---

[11] ***Rush*** was decided before adoption of the Rules of Evidence, but we have cited it in interpreting Rule 404(b). ***See***, ***e.g.***, ***Commonwealth v. Miles***, 846 A.2d 132, 136 (Pa. Super. 2004), ***appeal dismissed as improvidently granted***, 871 A.2d 1248 (Pa. 2005); ***Commonwealth v. O'Brien***, 836 A.2d 966, 971 (Pa. Super. 2003), ***appeal denied***, 845 A.2d 817 (Pa. 2004). We may cite cases predating the enactment of the Pennsylvania Rules of Evidence to the extent they are in accord with the Rules. ***Commonwealth***
*(Footnote Continued Next Page)*

Here, the evidence permitted the trial court to find "that a high correlation in the details of the crimes exists such that proof that the defendant committed one makes it very unlikely that anyone else but the defendant committed the others." **Newman**, 598 A.2d at 278. At the hearing on the motion for consolidation, the Commonwealth presented evidence linking the crimes against Ms. Ross and those against S.J.: the crimes occurred around the same time (around 3 A.M.) at the same location (at 62nd Street and Elmwood Avenue in Philadelphia), and the victims were both young black women who were alone and were robbed of their cell phones at gunpoint. N.T., 12/4/13, at 5-6. Both victims described their assailant as wearing the same type of clothing. **Id.** at 9-10. As in **Rush**, 646 A.2d at 561, these crimes involved isolated victims who were similar, were perpetrated by an assailant wearing similar attire, occurred in comparable locations, involved the use of similar weapons, and resulted in the taking of the same kinds of property.

We are satisfied that in reaching its conclusion to consolidate these criminal informations, the trial court "balance[d] the relevancy and evidentiary need for the evidence of distinct crimes against the potential for

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

**v. Aikens**, 990 A.2d 1181, 1185 n.2 (Pa. Super. 2000). Although **Rush** dealt with the admissibility of a prior criminal conviction involving similar facts, the test for similarity is the same in a consolidation context. **See generally Newman**, 598 A.2d at 278 (affirming consolidation of the criminal informations for two rapes because the facts for each rape were similar).

- 21 -

undue prejudice." ***Gordon***, 673 A.2d at 870. Because one crime escalated from a property crime to a sexual assault and the crimes involved two different victims on two sequential nights, these two incidents were "capable of separation by the jury so that there is no danger of confusion." Pa.R.Crim.P. 582(A)(1)(a).

In order to further ensure that the jury would separate these criminal incidents and not confuse them, the trial court provided proper and sufficient jury instructions:

> [Y]ou cannot find the defendant guilty unless you are satisfied beyond a reasonable doubt, by all of the evidence, direct and/or circumstantial, not only that the crime was committed, but that the defendant is the person who committed it. . . . He could be guilty of all, he could be guilty of some, not guilty of others. Just because you're convinced he committed crimes on one night, doesn't mean, necessarily, he committed crimes on another night. That's all up to you to decide. . . . You've heard evidence for both complainants against this defendant, from Devin Ross and [S.J.]. When rendering your verdict, you are to consider each case individually as I was explaining with the verdict sheet. He could be guilty of one, not guilty of the other, guilty of both, not guilty of both.

N.T., 1/8/15, at 88-90. Hence, pursuant to ***Johnson***, 211 A.2d at 103, these instructions further ameliorated any concerns that the jury might fail to differentiate the two incidents because they informed the jury that they should consider the crimes individually or separately and must find guilt beyond a reasonable doubt in each. Before completing its instructions, the trial court asked counsel whether they had "anything additional," and counsel responded in the negative. N.T., 1/8/15, at 107. The jury is

- 22 -

presumed to have followed the instructions it was given. *See Commonwealth v. Chmiel*, 30 A.3d 1111, 1184 (Pa. 2011). Thus, the trial court did not abuse its discretion or create a clear injustice to Appellant by consolidating the two criminal informations. *See Lark*, 543 A.2d at 496.

Appellant contends that even if there was sufficient evidence to consolidate the cases prior to trial, the evidence presented at trial demonstrated that there was an insufficient basis to support the consolidation. Appellant's Brief at 4, 35-37. Appellant used this argument as the basis for his second motion for a mistrial, *id.* at 17; N.T., 1/8/15, at 5-6, and he now claims that the court erred in denying that motion.

A motion for a mistrial is controlled by Pa.R.Crim.P. 605(B): "When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity." Our standard of review for a challenge to the denial of a motion for mistrial is well settled:

> A motion for a mistrial is within the discretion of the trial court. [A] mistrial [upon motion by one of the parties] is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.
>
> An abuse of discretion is more than an error of judgment. On appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment

- 23 -

exercised by the trial court was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will. . . .

The inquiry into whether prejudice has accrued is necessarily a fact specific one.

***Commonwealth v. Hudson***, 955 A.2d 1031, 1034 (Pa. Super. 2008). "A mistrial is an extreme remedy ... [that] ... must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial." ***Commonwealth v. Szakal***, 50 A.3d 210, 218 (Pa. Super. 2012).

We disagree with Appellant that "elements of common plan, design and scheme ha[d] not been made out after the facts" were presented during trial. N.T., 1/8/15, at 6-7. The evidence at trial established robberies at gunpoint of young black females at the same location and time of day 24 hours apart by a black male with facial hair or sideburns in his late 20s or early 30s wearing similar clothing. Exs. C-3 at 1, C-11 at 2. The manner in which the crimes commenced was substantially identical. ***See Rush***, 646 A.2d at 561; ***Newman***, 598 A.2d at 278 (informations may be consolidated where the separate offenses show the unusual or distinctive *modus operandi* of the defendant). Accordingly, contrary to Appellant's position, the fact that the second robbery worsened into a sexual assault does not undermine all these other similarities. We discern no abuse of discretion in the trial court's refusal to grant a mistrial.

**Challenge to Photographic Array**

Appellant claims that "the lower court erred in denying a mistrial when the Commonwealth failed to disclose mandatory and exculpatory evidence that the police tainted S.J.'s in court and out of court identification in violation of **Brady v. Maryland**, 373 U.S. 83 (1963)." Appellant's Brief at 37 (unnecessary capitalization omitted). This alleged exculpatory evidence was that the police had "tainted" S.J.'s identification of Appellant from the photographic array by "misrepresent[ing]" Appellant's appearance in his photograph, when "Detective Martinka and his partner told S.J. that [Appellant's] photograph might not look like the person she saw because it might be old." **Id.** at 17, 37 (citing N.T., 1/7/15, at 14-16). Counsel allegedly did not learn of the circumstances of S.J.'s identification of Appellant from the photographic array until Detective Martinka's trial testimony. **Id.** Appellant asserts that had the Commonwealth properly disclosed the "suggestive circumstances" of S.J.'s identification, the outcome of the trial would have been different, because (1) he would have filed a motion to suppress and succeeded in suppressing S.J.'s out-of-court and in-court identifications; (2) the cases thereby would not have been consolidated, as the trial court would not have relied upon the double identifications when consolidating the trials; and (3) the defense would have consulted and called an expert witness regarding general eyewitness identifications. Appellant's Brief at 17, 37, 39, 44; N.T., 1/7/15, at 14-16.

Appellant argues that no instruction could adequately cure the prejudice that resulted from the trial court's alleged error. Appellant's Brief at 17, 37 (citing N.T., 1/7/15, at 14-16).

"To establish a **Brady** violation, [A]ppellant must demonstrate: (1) the prosecution concealed evidence; (2) the evidence was either exculpatory or impeachment evidence favorable to him; and (3) he was prejudiced." **Commonwealth v. Treiber**, 121 A.3d 435, 460–61 (Pa. 2015). Appellant failed to meet these requirements.

First, Appellant failed to demonstrate that "the prosecution concealed evidence." **See Treiber**, 121 A.3d at 460. Appellant makes the bald claim that "the Commonwealth . . . hid exculpatory evidence in violation of **Brady**," but presents no proof to support this contention. **See** Appellant's Brief at 24. There is nothing in the record to suggest that the Commonwealth had prior knowledge of and concealed the detective's alleged "misrepresent[ion]" of Appellant's appearance in his photograph. **See id.** at 17, 37 (citing N.T., 1/7/15, at 14-16). Accordingly, Appellant did not establish the first prong of a **Brady** violation.

Second, Appellant also failed to show that the allegedly concealed evidence was exculpatory. **See Treiber**, 121 A.3d at 461. "Exculpatory evidence is that which extrinsically tends to establish defendant's innocence of the crimes charged." **Commonwealth v. Lambert**, 765 A.2d 306, 325 n.15 (Pa. Super. 2000); **see also Commonwealth v. Redmond**, 577 A.2d

547, 552 (Pa. Super. 1990) (citing **Giglio v. U.S.**, 405 U.S. 150 (1972)) (exculpatory evidence includes material that goes to the heart of the defendant's guilt or innocence as well as that which might well alter the jury's judgment of the credibility of a crucial prosecution witness); **Commonwealth v. Watson**, 512 A.2d 1261, 1266 (Pa. Super. 1986) (same as **Lambert**). "**Brady** does not require the disclosure of information that is not exculpatory but might merely form the groundwork for possible arguments or defenses." **Commonwealth v. Roney**, 79 A.3d 595, 608 (Pa. 2013) (citations and internal quotations omitted).

Here, Appellant claims only that he could have made additional arguments if he had known about Detective Martinka's comments to S.J. — that is, that he could have argued for suppression of S.J.'s identification, that he would have had an additional argument to make against the identification, and that he could have consulted and called an expert witness to talk about the identification. **See** Appellant's Brief at 39, 44. However, at no point does he set forth why the allegedly "suggestive circumstances" of Detective Martinka's statements to S.J. should be considered exculpatory – he does not expound that these circumstances establish his innocence of the crimes charged. **See Lambert**, 765 A.2d at 325 n.15; **Watson**, 512 A.2d at 1266. Appellant points to no evidence which approaches the definition of exculpatory material; he merely declares: "There should be little doubt that the first two prongs of a **Brady** violation occurred." Appellant's Brief at 38.

He never asserts his innocence. **See id.** at 37-45. Without an argument demonstrating that these "suggestive circumstances" would have been exculpatory, Appellant has failed to demonstrate fulfillment of the second element of a **Brady** violation. **See Treiber**, 121 A.3d at 461. Accordingly, Appellant's **Brady** challenge fails.[12]

Although Appellant characterizes his argument as a **Brady** challenge, his brief reveals that he is making a broader claim that S.J.'s identification evidence should have been suppressed on due process grounds. **See** Appellant's Brief at 40-42. Because this argument is not clearly set forth in the statement of issues in Appellant's brief, it appears to have been waived. **See** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"). In any event, we conclude that this argument too is without merit.

> We have held —
>
> Whether an out of court identification is to be suppressed as unreliable, and therefore violative of due process, is determined from **the totality of the circumstances.** Suggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but suggestiveness alone does not warrant exclusion. Identification evidence will not be suppressed unless the facts demonstrate that the identification procedure was **so impermissibly suggestive** as to give rise to **a very substantial likelihood of irreparable misidentification**.

---

[12] For this reason, we need not address the third **Brady** factor, *i.e.*, whether Appellant was prejudiced. **See Treiber**, 121 A.3d at 461.

*In re J.G.*, 145 A.3d 1179, 1185 (Pa. Super. 2016) (emphasis added); *see also Commonwealth v. Jaynes*, 135 A.3d 606, 610 (Pa. Super.) ("A pretrial identification will not be suppressed as violative of due process rights unless the facts demonstrate that the identification procedure was so infected by suggestiveness as to give rise to a substantial likelihood of irreparable misidentification. . . . [W]here a defendant does not show that improper police conduct resulted in a suggestive identification, suppression is not warranted" (emphasis omitted)), *appeal denied*, 145 A.3d 724 (Pa. 2016). "Due process does not require that every pretrial identification of witnesses must be conducted under laboratory conditions of an approved lineup." *Commonwealth v. Kearney*, 92 A.3d 51, 67 (Pa. Super.), *appeal denied*, 101 A.3d 102 (Pa. 2014).

Here, Appellant contends that pretrial disclosure of Detective Martinka's remarks would have resulted in the suppression of S.J.'s identification in its entirety. Appellant's Brief at 17, 37-39; N.T., 1/7/15, at 14-16. However, the detective's comments about the potential age of the photographs did not suggest **which** of the pictured individuals was suspected of being the perpetrator, and, at that time, he did not know which particular photograph S.J. was considering. **See** N.T., 1/6/15, at 131, 142, 144-45. S.J. confirmed that no one suggested to her who in the photographic array she should identify. **Id.** at 149. When asked why she picked out Appellant's photograph in the array, she unambiguously

answered, "Because I knew that that was the man that . . . sexually assault[ed] me and rob[bed] me." *Id.* In addition, Detective Martinka's statement *after* S.J.'s identification obviously could not have influenced her prior choice of photographs. *Id.* at 132, 145. Based upon the totality of these circumstances, there was no suggestiveness in the out-of-court identification process. Therefore, neither of the detective's statements would have justified suppression of S.J.'s pretrial identification.[13]

In addition, the trial court gave a curative instruction that remedied any prejudice that might have resulted from the way the identification took place. Trial Ct. Op., 2/4/16, at 20 (citing N.T., 1/7/15, at 15-16, 20-22). *See* N.T., 1/8/15, at 84-88. Under our precedents, the charge was sufficient. *See, e.g.*, *Commonwealth v. Sanders*, 42 A.3d 325, 332 (Pa. Super. 2012) (instruction is necessary to inform the jury that "an eyewitness identification should be viewed with caution when . . . the witness did not have an opportunity to view the defendant clearly, equivocated on the identification of the defendant, or has had difficulties identifying the defendant on prior occasions"), *appeal denied*, 78 A.3d 1091 (Pa. 2013);

---

[13] Appellant argues that this case is analogous to *Commonwealth v. Wade*, 867 A.2d 547 (Pa. Super. 2005). *See* Appellant's Brief at 40-41. In *Wade*, 867 A.2d at 553-54, two witnesses to a robbery disclosed during their trial testimony that, shortly after the robbery, the police showed them an identification card belonging to the defendant. We held that a mistrial was warranted because this procedure was so suggestive that it irreparably tainted any subsequent identification. *Id.* The facts of this case bear no resemblance to those in *Wade*, and we find that decision inapposite here.

***Commonwealth v. Simmons***, 647 A.2d 568, 569 (Pa. Super. 1994) (jury instruction that identification testimony must be received with caution where it is doubtful was warranted), ***appeal denied***, 659 A.2d 987 (Pa. 1995).

The second claim raised by Appellant for our review therefore is without merit.

### Cross-Examination of Detective Martinka

The third issue raised by Appellant is that the trial court erred in prohibiting his cross-examination about the proper police procedures and policies regarding identifications by witnesses. ***See*** Appellant's Brief at 4-5, 45-48. During trial, the court consistently sustained the Commonwealth's objections to these questions. When it did so, Appellant did not make an offer of proof or otherwise note an exception to the ruling. N.T., 1/6/15, at 190. "A party may claim error in a ruling to . . . exclude evidence only . . . if the . . . party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." Pa. R. Evid. 103(a)(2). "An appellate court cannot determine whether the proffered testimony was properly excluded without an offer of proof at trial." ***Romeo v. Manuel***, 703 A.2d 530, 533 (Pa. Super. 1997). Because Appellant did not properly preserve his exception to the trial court's ruling, he cannot raise this challenge for the first time on appeal to this Court. ***See*** Pa.R.A.P. 302(a); ***Commonwealth v. Shamsud-Din***, 995 A.2d 1224, 1228 (Pa.

Super. 2010).  Thus, the third issue raised by Appellant for our review is waived.[14]

**Challenge to the Discretionary Aspects of Sentencing**

Finally, Appellant challenges his aggregate sentence — consisting of consecutive guideline sentences for each offense — because he says it is "manifestly excessive, clearly unreasonable, far surpasses what is necessary to protect the public, and failed to account for [A]ppellant's rehabilitative needs, and where the lower court failed to state its reasons for its sentence on the record."  Appellant's Brief at 5.

"When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial

---

[14] Even if this challenge were not waived, however, we would affirm, because the trial court's ruling was not an abuse of its discretion. Evidentiary rulings, including those concerning the permissible scope of cross-examination, are committed to the discretion of the trial court and will not be reversed absent an abuse of discretion. **Commonwealth v. Fletcher**, 861 A.2d 898 (Pa. 2004).  During cross-examination, Appellant sought to elicit Detective Martinka's opinion — either through direct inquiries or by reference to past cases — on whether double-blind administration of photographic arrays produces more reliable results and whether police comments to an eyewitness influence the witness's identification.  N.T., 1/6/15, at 190-91.  But Detective Martinka was not qualified as an expert in the field of eyewitness reliability, and expert testimony on factors affecting eyewitness reliability, including the effect of police introductions to eyewitnesses, must be given by expert witnesses only.  **See Commonwealth v. Walker**, 92 A.3d 766, 779-80, 788-91 (Pa. 2014) (citing Pa. R. Evid. 702).  Hence, the trial court did not abuse its discretion in holding that Detective Martinka was not permitted to offer an opinion on whether any given practice was more likely to yield accurate identifications.

question as to the appropriateness of the sentence under the Sentencing Code." ***Commonwealth v. Glass***, 50 A.3d 720, 726 (Pa. Super. 2012).[15] Appellant included such a statement in a separate section of his brief under Appellate Rule 2119(f). ***See*** Appellant's Brief at 21-23. There, Appellant stated that the trial court "was required to consider the sentencing criteria, the character of the defendant, and the needs of the defendant in addition to just his instant offense and criminal record," and that "because [the trial court] failed to do so, a substantial question has been raised." ***Id.*** at 22 (citing ***Commonwealth v. Mathews***, 486 A.2d 495 (Pa. Super. 1984)).

Appellant also relies on ***Commonwealth v. Mouzon***, 812 A.2d 617 (Pa. 2002) (plurality opinion), in asserting that the imposition of consecutive sentences in this instance — that is, "the imposition of consecutive lengthy state sentences on eight difference offenses stemming from only two separate incidents" with "a minimum ten years longer and a maximum three decades longer than even third strike offenses," Appellant's Brief at 23 — results in a manifestly excessive sentence and presents a substantial question for review. However, as we stated in ***Commonwealth v. Dodge***, 77 A.3d 1263 (Pa. Super. 2013):

---

[15] It is also necessary for Appellant to have preserved the issue in the trial court and to have filed a timely appeal. ***Commonwealth v. Colon***, 102 A.3d 1033, 1042-43 (Pa. Super. 2014). Appellant's appeal was timely filed, and he preserved his challenge to the discretionary aspects of sentencing in his post-sentence motion and in his Pa.R.A.P. 1925(b) statement.

> To make it clear, a defendant **may** raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

*Id.* at 1270 (emphasis in original).

A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process. *Commonwealth v. Swope*, 123 A.3d 333, 338 (Pa. Super. 2015). "The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Glass*, 50 A.3d at 727.

In the current action, Appellant does not make a bald claim of excessiveness. He suggests that the trial court "failed to conduct an individualized consideration as to [his] rehabilitative needs as the Sentencing Code requires, focusing solely on the facts relating to the instant case and his criminal record" and that "[t]he trial court's sentence effectively condemns [Appellant] to life in prison." Appellant's Brief at 22-23. In addition, Appellant's contention that the trial court failed to state adequate reasons on the record for Appellant's sentence qualifies as a substantial question for our review. *Commonwealth v. Flowers*, 149 A.3d 867, 871 (Pa. Super. 2016). Appellant's claims therefore raise a substantial question,

and we therefore will consider the substantive merits of his sentencing issues.

> Our standard of review is as follows:
>
> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014) (citation omitted), *appeal denied*, 117 A.3d 297 (Pa. 2015).

We address Appellant's challenges to his sentence in reverse order. We first consider whether the trial court "failed to state its reasons for its sentence on the record." Appellant's Brief at 5. Contrary to that claim, prior to imposing sentence, the trial court recited that it did not believe that Appellant had "demonstrated the level of depravity that requires [it] to impose a sentence" of "hundreds of years." N.T., 4/16/15, at 25; *see also* Trial Ct. Op., 2/4/16, at 25. Nonetheless, the trial court added, "But the crimes are serious and . . . [it] expect[s] to impose lengthy prison sentences." N.T., 4/16/15, at 25; *see also* Trial Ct. Op., 2/4/16, at 25. The trial court furthermore noted for the record, "[It has] listened to arguments of counsel, [it has] read the presentence reports and reviewed the sentencing guidelines." N.T., 4/16/15, at 26. When Appellant sought reconsideration of his sentence, the court added:

[Appellant] has spent his entire life committing crimes like this. . . . [T]he likelihood of him committing another offense when he gets out is just overwhelming. We would like to think that people change, rehabilitated, improve over time, but he goes in, serves his bit, as soon as he gets out, gets a gun and goes off and starts robbing and raping. So, keeping him in jail until he's in his 60[s] is actually a pretty good idea. . . . It's a sad thing to say, an unpleasant thing to do, but that's the appropriate sentence. You get so many chances. And you really can't take a chance with someone who has this level of violence because he's asking [the trial court] to show mercy on him, [the trial court is] trying to show mercy on his next victim. Because there's going to be a next victim, just a question of how long it takes before he gets out. He'll get out, in a matter of days, he'll find a gun, and he'll be doing the same thing he did in this case. [The trial court does not] think there's much hope of anything else with [Appellant].

So, [Appellant] said his piece, [the trial court] looked over the notes of testimony [and] the pre-sentence report [and] reconsidered the sentence, but the same sentence will stand.

N.T., 8/3/15, at 8-9.

"A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence." *Commonwealth v. Crump*, 995 A.2d 1280, 1283 (Pa. Super. 2010). A "discourse on the court's sentencing philosophy, as it applies to the defendant before it, is not required." *Commonwealth v. Hill*, 629 A.2d 949, 953 (Pa. Super. 1993). The reasons merely "must reflect the judge's consideration of the sentencing code, the circumstances of the offense and the character of the offender." *Commonwealth v. Beasley*, 570 A.2d 1336, 1338 (Pa. Super. 1990). The trial court fulfilled this requirement.

Moreover, the trial court rendered its sentence in light of two PSIs, and it recited on the record that it considered both of them. N.T., 4/16/15, at 26; N.T., 8/3/15, at 9. As the Supreme Court stated in *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988):

> Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed.

Thus, "[w]here the sentencing judge had the benefit of a pre-sentence report, it will be presumed that he was aware of relevant information regarding appellant's character and weighed those considerations along with the mitigating statutory factors." *Commonwealth v. Fullin*, 892 A.2d 843, 849–850 (Pa. Super. 2006). We therefore conclude that the trial court created a proper record and rendered his sentence fully informed by it.

We next consider whether the trial court "failed to account for [A]ppellant's rehabilitative needs." Appellant's Brief at 5. The 2015 PSI, at 2, reasoned: "Given the violent nature of [Appellant's] offense, his history of violent offenses, and his apparent inability to follow the rules [and] regulations of probation, he presents a danger to both himself and others and is not a good candidate for community service." Because the trial court

found Appellant unable to act appropriately when he was given the opportunity to rehabilitate himself during earlier probation, and instead found that Appellant resorted to recidivism, *see* N.T., 4/16/15, at 9-10, 16-17, we conclude that the trial court did not fail to take Appellant's potential rehabilitation into consideration.

Appellant further contends that his sentence "far surpasses what is necessary to protect the public." Appellant's Brief at 5. In addition to the 2015 PSI's report that Appellant was a danger to others, the 2004 PSI, at 4, also concluded that Appellant "is a dangerous individual against whom society should be protected." The trial court said that even though Appellant had not demonstrated a "level of depravity" that required a sentence of hundreds of years, he nevertheless had committed serious crimes that required "lengthy prison sentences." Trial Ct. Op. at 25 (quoting N.T., 4/16/15, at 25). The court thus considered Appellant dangerous to society, and it did not abuse its discretion by holding that Appellant presents a real and present danger justifying a substantial period of incarceration.

Finally, Appellant's claims that his sentence was "clearly unreasonable" and "manifestly excessive" lack merit. Both counsel agreed that Appellant was not eligible for a Recidivism Risk Reduction Incentive ("RRRI") and that his prior record score was capped at 5 as a result of multiple juvenile adjudications and adult convictions. N.T, 4/16/15, at 9-10. Additionally, they concurred that the offense gravity score on the instant charges of rape

and unlawful contact were each rated 12. *Id.* The guidelines, when employing the deadly weapon enhancement and if imposed consecutively for each charge, recommended a total period of incarceration in the standard range of 50-100 years, which was the aggregate sentence requested by the Commonwealth. *Id.* at 12. The aggregate sentence imposed by the court is 35-85 years.

In *Commonwealth v. Andrews*, 720 A.2d 764, 766 (Pa. Super. 1998), the appellant was sentenced to 65-130 years' imprisonment for several robberies and related offenses. This Court held that this sentence was not manifestly excessive where the appellant was a threat to the community and had a significant prior criminal record. *Id.* at 768. Here, Appellant was sentenced to less time than the defendant in *Andrews* for robberies and a sexual assault. As in *Andrews*, Appellant has been determined to be a threat to the community and has a significant prior criminal record. Therefore, analogously to *Andrews*, 720 A.2d at 768, Appellant's sentence is not manifestly excessive.

There is no "volume discount" on crime. *See Commonwealth v. Belsar*, 676 A.2d 632, 634 (Pa. 1996). Thus, in the present appeal, consecutive standard range sentences are appropriate. Hence, the trial court did not abuse its discretion in imposing Appellant's sentence of 35 to 85 years' incarceration.

Judgment of sentence affirmed.

Judge Olson joins the memorandum.

Justice Fitzgerald concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/7/2017